UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

REGINA A. EDDY                                    CIV. ACTION NO. 3:24-00706

VERSUS                                            JUDGE DAVID C. JOSEPH

INTERNATIONAL BUSINESS                            MAG. JUDGE KAYLA D. MCCLUSKY
MACHINES CORPORATION

<u>REPORT AND RECOMMENDATION</u>

Before the undersigned Magistrate Judge, on reference from the District Court, is a Rule

12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted [doc. #

29] filed by Defendant, International Business Machines Corporation.  The motion is opposed.

For reasons explained below, IT IS RECOMMENDED that the motion be GRANTED.

<u>Background</u>

On May 24, 2024, Plaintiff Regina Eddy ("Eddy"), an African-American female,[1] filed

the instant pro se complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e,

*et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et*

*seq*., against her former employer International Business Machines Corporation ("IBM").

(Compl. [doc. # 1] and Amend. Compl. [doc. # 26]).[2]  She contends that IBM discriminated

---

[1] *See* Jan. 10, 2024 Psychiatric Evaluation; Amend. Compl., Exh. L [doc. # 26-1].

[2] In response to IBM's original motion to dismiss, *see* discussion, *infra*, Eddy successfully
petitioned the Court for leave to amend her complaint.  *See* doc. #s 10, 13, 20, 25.  An "amended
complaint supersedes the original complaint and renders it of no legal effect, unless the amended
complaint specifically refers to and adopts or incorporates by reference the earlier pleading."
*King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d
504, 508 (5th Cir. 1985)).  Here, the amended pleading does not adopt or incorporate the prior
complaint. Therefore, the operative complaint for the purpose of the pending motion to dismiss is
Eddy's amended  complaint. [doc. # 26].

against her on the basis of age and race and also retaliated against her for engaging in protected activity.  (Amend. Compl., ¶¶ 7-8).

Eddy worked for IBM for a total of approximately nine years.  (Amend. Compl., ¶ 11). However, she did not begin suffering race or age discrimination or retaliation until November 1, 2020, when she moved to IBM's Workforce Management Team.  (Amend. Compl., pg. 7).  She alleges that, on December 15, 2020, two IBM resource managers, Trish Tichnell and Sarah Haines, engaged in age and race discrimination when Trish sent a message to Sarah stating (apparently in reference to Eddy), "I keep going back to her comment – I am older but not 100 – I feel like she is acting like she is 100 cause she's not getting it."  (Amend. Compl., pgs. 3-4 and Exh. A).

IBM investigated the incident and ultimately offered Eddy the option to remain on the "Federal side," or to move to "commercial."  *Id*., pg. 4.  Eddy asked to remain on the "Federal side," but was moved to "commercial," anyway.  *Id*.  Meanwhile, both the "white young ladies were placed in higher positions and remained in current management jobs."  *Id*.  Eddy contends that IBM's internal investigation was mishandled and was tilted to "favor non-Blacks."  *Id*.  As a result of the "race and retaliation," Eddy's career was compromised.  *Id*.

Over one year later, on February 8, 2022, the commercial team leads, Kevin Richardson and Christina "KT" (hereinafter, "KT") purportedly used "race" to keep Eddy from receiving a fair year-end evaluation.  (Amend. Compl., pg. 4).  However, Shelly Robinson overturned the decision and upgraded one of Eddy's annual IBM career measurements.  *Id*.  Moreover, according to Eddy, KT provided Costa Rica "resources" with backup, but not Eddy, which meant

2

that Eddy had to "work irrational hours with negative backlash in a demeaning racially motivated way." *Id*., pgs. 4-5.

Almost seven months later, on September 2, 2022, IBM's "resource," Hermes Gustavo Matamoros ("Matamoros") sent an email to Eddy advising her that, because of a few unsuccessful 1:1 phone conversations with her, he was changing his approach to document everything with her via Email. (Amend. Compl., Exh. C). As Eddy characterized it, Matamoros was a source of continual verbal harassment, which culminated with his refusal to work with her. (Amend. Compl., pg. 5). Because of Matamoros's harassment, Eddy asked their common manager, Rhonda Reyes ("Reyes") whether she could work independently of Matamoros. *Id*. The meeting with Reyes resulted in a temporary solution to Matamoros's racially motivated actions. *Id*. Despite IBM's approval of *Eddy's* request to work independently of Matamoros, she nonetheless maintains that her job required verbal interaction with Matamoros and that the "failure to adhere to necessary business conduct is blatant racially motivated misconduct of [IBM's] human resource." *Id*., pg. 6.

On January 3, 2023, Eddy sent an email to Reyes to make her case for a move from "early professional status to experienced WSP." (Amend. Compl., Exh. K). On January 27, 2023, Eddy sent another email to Reyes pointing out that her salary was below the minimum range both regionally and nationally. (Amend. Compl., Exh. K).

During an April 4, 2023 meeting, Eddy's supervisor, Reyes, informed her that, "Band 6 resources," which apparently included Eddy's position, were being "released." *Id*., pg. 6. Reyes confirmed to Eddy that if she had been compensated as a "Band 7 or higher," then she would not

have been terminated.  *Id*.  Therefore, Eddy contends that IBM's failure to promote her resulted in "retaliation."  *Id*.

In an April 6, 2023 letter to Karen McGowan, IBM's Director of Consulting, Eddy wrote that she believed that IBM's recent decision to release her from her duties represented a "case of retaliation" tied to her 2019 case of "employee misuse as it related to discrimination and unfair practices . . ."  (Amend. Compl., Exh. E).  Eddy disclosed that she had been panic stricken ever since she had received the distressing news that week.  *Id*.  Upon advice of her clinician, she needed to take some time away as soon as possible.  *Id*.  Eddy noted that, one positive aspect of her employment, was the past year of service under Reyes' leadership.  *Id*.  She also acknowledged that she had not made Reyes aware of her past negative employee relations until "most recently."  *Id*.  Eddy stated that she still was seeking fair compensation, as she transitioned out of the company.  *Id*.

Because of depression and anxiety, Eddy did not work from April 11, 2023, until January 8, 2024.  *See* Amend. Compl., Exh. G and Exh. L.  On January 8, 2024, IBM returned Eddy to active-duty status and then proceeded to terminate her employment as of January 30, 2024.  *Id*.

On January 29, 2024, Eddy filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC").  (Jan. 29, 2024 EEOC Charge, Amend. Compl., Exh. L). In response to why she thought she was discriminated against, Eddy checked the boxes for race, age, and retaliation.  *Id*.  She also stated that the most recent job action that she thought was discriminatory occurred on February 20, 2023.  *Id*.  In the narrative section of her charge, she explained:

- In the fall of 2019 she was discriminated against on the basis of age when she saw a derogatory dialog by fellow team members.  Moreover, the training was provided "in such a way as to keep [her] from attaining successful knowledge transfer."

- In December 2022, she was retaliated against when she received an inaccurate end of year review by her former boss, "Kevin."

- In February 2023, she believed she was retaliated against and held back from promotion because of the prior claims she had submitted.

*Id.*

On January 30, 2024, Eddy filed another discrimination charge with the EEOC, where she again checked the boxes for race and age discrimination and retaliation.  (Jan. 30, 2024 EEOC Charge, Amend. Compl., Exh. F).  This time, however, she changed the date of her most recent discriminatory job action to April 4, 2023.  *Id.*  She also changed her narrative section to indicate that she was retaliated against on April 4, 2023, instead of February 2023.  *Id.*

On March 8, 2024, the EEOC issued Eddy a right to sue notice.  (EEOC Determination; Amend. Compl., Exh. J).

As stated above, Eddy filed the instant civil rights complaint against IBM on May 24, 2024.  She seeks to recover compensatory and punitive damages, penalties, legal fees, plus hardship to her family, for the total sum of  $10,450,000.  (Amend. Compl.; Prayer).

On August 19, 2024, IBM filed a Rule 12(b)(6) motion to dismiss Eddy's complaint.  (M/Dismiss [doc. # 6]).  On September 10, 2024, Eddy filed a motion for leave to amend her complaint, which the Court granted.  *See* doc. #s 10, 13, 20, 25.  In response to the amended complaint, the Court permitted IBM to withdraw its original motion to dismiss.  [doc. #s 27-28].

On January 7, 2025, IBM filed the instant motion to dismiss Eddy's amended complaint for failure to state a claim upon which relief can be granted.

Eddy filed her memorandum in opposition to the motion to dismiss on January 28, 2025.

(Pl. Opp. Brief [doc. # 31]).

On February 21, 2025, IBM filed a reply brief.  (Def. Reply [doc. # 39]).

On February 26, 2025, Eddy filed a sur-reply that the Court retroactively granted her leave to file.  [doc. #s 41 & 44].

On March 21, 2025, Eddy filed an amended opposition to the motion to dismiss.  [doc. # 45].

Briefing is complete; the matter is ripe.

### Rule 12(b)(6) Principles

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ."  FED. R. CIV. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 667-668 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.  Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between.  *Iqbal,* 556 U.S. at 556.  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  *See Twombly*, 550 U.S. at 556.  Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal,* 556 U.S. at 679 (citation omitted).  A well-pleaded complaint may proceed even if it

6

strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly*, 550 U.S. at 556.

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal*, 556 U.S. at 678. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. Moreover, Rule 12(b)(6) authorizes courts to dismiss a claim on the basis of a dispositive issue of law, notwithstanding that it otherwise might be well-pleaded. *See Neitzke v. Williams*, 490 U.S. 319, 326-327 (1989) (citations omitted).

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. App'x. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument." *Skinner v. Switzer*, 562 U. S. 521, 530 (2011) (citation omitted). Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly,* 550 U.S. at 555).

## Analysis

In its motion, IBM advanced three grounds for dismissal: (1) all challenged conduct that occurred earlier than 300 days before Eddy filed her initial charge with the EEOC, i.e., conduct that pre-dates April 4, 2023, is time-barred; (2) Eddy failed to exhaust administrative remedies

before the EEOC as to (a) her race discrimination claims and (b) her retaliation claim pertaining to events that occurred on September 2, 2022; and (3) she failed to plead a prima facie case of age discrimination under the ADEA, a race discrimination claim(s) under Title VII, and/or retaliation under the ADEA and Title VII.

The Court will address the arguments, in turn.

## I.      Administrative Exhaustion

Title VII and the ADEA's charge-filing requirements are not jurisdictional.  *Fort Bend Cty., Texas v. Davis*, 587 U.S. 541, 549-550 (2019) (Title VII); *Stancu v. Hyatt Corp./Hyatt Regency Dallas*, Civ. Action No. 20-0864, 2021 WL 495883, at *6 (N.D. Tex. Jan. 26, 2021), *R&R adopted,* 2021 WL 487756 (N.D. Tex. Feb. 10, 2021) (ADEA).  Therefore, the issue may be raised and addressed within a Rule 12(b)(6) motion.  Although failure to exhaust administrative remedies represents an affirmative defense, dismissal may be granted pursuant to Rule 12(b)(6) so long as the defense is evident from the face of the complaint.  *Luebano v. Office Dept, L.L.C.*, 2023 WL 4249268, at *3 (5th Cir. June 29, 2023) (unpubl.) (citations omitted).

a)      Timeliness

Before filing suit under Title VII and the ADEA, a plaintiff must first exhaust his or her administrative remedies.  *Jefferson v. Christus St. Joseph Hosp.*, 374 Fed. App'x. 485, 489 (5th Cir. 2010) (citations omitted); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002) ("Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court.").  "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor*, 296 F.3d at 379 (citation omitted).

In a "deferral state" such as Louisiana,[3] a Title VII plaintiff must file a charge of discrimination with the EEOC within 30 days after receiving notice that the state or local agency has terminated proceedings or within 300 days of the alleged discriminatory employment action, whichever is earlier.  42 U.S.C. § 2000e-5(e)(1) (Title VII);  29 U.S.C. § 626(d)(1)(B); *Burrell v. Janmeja v. Board of Supervisors of Louisiana State University,* 96 Fed. App'x. 212, 214 (5th Cir. 2004).  Furthermore, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act.  The charge, therefore, must be filed within the . . . 300-day time period after the discrete discriminatory act occurred."  *Woods*, 2024 WL 4664019, at *2 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

Nevertheless, "[a] party may file past the 300-day period if there are grounds for equitable tolling."  *Id.*  The Fifth Circuit has recognized at least three bases for equitable tolling: "(1) the pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about the nature of [his] rights."  *Woods*, 2024 WL 4664019, at *2 (citing, *inter alia*, *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011)).

In addition, there is the continuing violation doctrine, which permits a plaintiff to file a

---

[3] "A deferral state is one in which state law prohibits discrimination in employment and a state agency has been established to grant or seek relief for such discriminatory practice. *Clark v. Resistoflex Co.,* 854 F.2d 762, 765 n.1 (5th Cir. 1988). The Louisiana Commission on Human Rights has been funded and operating since April 1994, making Louisiana a deferral state since that time.  *See* La. R.S. § 51:2233; *DeBlanc v. St. Tammany Par. Sch. Bd.*, Civ. Action No. 13-6253, 2015 WL 1245781, at *6 n.9 (E.D. La. Mar. 18, 2015); *see also Woods v. Smith*, No. 23-30918, 2024 WL 4664019, at *2 (5th Cir. Nov. 4, 2024) ("Louisiana has declared itself a 'deferral state' which extends the period to file to 300 days.").

complaint when "the last act alleged is part of an ongoing pattern of discrimination and occurs within the filing period . . ." *Smith v. Gen. Motors, L.L.C.*, No. 24-10841, 2025 WL 1693524, at *3 (5th Cir. June 17, 2025) (citing *McGregor v. Louisiana State Univ. Bd. of Sup'rs*, 3 F.3d 850, 866 (5th Cir. 1993)).  The doctrine applies only to acts that cannot be said to occur on any particular day, and, thus, discrete acts such as failure to promote and wrongful discharge typically do not fall within its ambit.  *Id*. (citation omitted).  Further, a plaintiff may not use the continuing violations doctrine "to resurrect claims about discrimination concluded in the past, even though its effects persist."  *Mack v. John L. Wortham & Son, L.P.*, 541 Fed. App'x. 348, 356 (5th Cir. 2013) (quoting *Berry v. Bd. of Supervisors of L.S.U.,* 715 F.2d 971, 979 (5th Cir. 1983)).  Equitable doctrines, such as the continuing violations doctrine, are to be employed "sparingly."  *Smith*, 2025 WL 1693524, at *3 (citation omitted).

To determine whether alleged discriminatory acts are related closely enough to constitute a continuing violation, the Fifth Circuit considers several non-exhaustive factors:  "(1) subject matter, (2) frequency, and (3) degree of permanence."  *Mack*, 541 Fed. App'x. at 356 (quoting *Berry,* 715 F.2d at 981.  "If the alleged acts involve the same type of discrimination, occur frequently, and indicate to the employee that the continued existence of adverse consequences is likely, it is probable that they rise to the level of continuing violations."  *Id.*

In this case, Eddy filed her initial discrimination charge with the EEOC on January 29, 2024, which permitted her to challenge discriminatory conduct that occurred no earlier than April 4, 2023, i.e., 300 days before her charge date.  (Jan. 29, 2024 EEOC Charge, Amend. Compl., Exh. L).  In her initial charge, however, Eddy stated that the most recent discriminatory job action that she experienced occurred on February 20, 2023.  *Id*.  In other words, her initial charge

was untimely for the purpose of challenging *any* of the discriminatory and/or retaliatory actions that she experienced at IBM.

Eddy quickly realized her error, however, and, by the next day, had filed another discrimination charge with the EEOC. (Jan. 30, 2024 EEOC Charge, Amend. Compl., Exh. F). This time, she changed the date of her most recent job action that she believed was discriminatory to April 4, 2023. *Id*. She also changed her narrative section to indicate that she was retaliated against on April 4, 2023, rather than February 2023. *Id*.

Of course, 300 days before January 30, 2024, is April 5, 2023. Consequently, if considered in isolation, the January 30, 2024 charge also is untimely. However, Title VII and ADEA regulations both authorize amendments to charges, explaining that "[s]uch amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will *relate back* to the date the charge was first received." 29 C.F.R. §§ 1601.12(b) and 1626.8(d) (emphasis added).

Applying these regulations, the Fifth Circuit has held that, "amendments that raise a new legal theory do not 'relate back' to an original charge of discrimination" unless "the facts supporting both the amendment and the original charge are essentially the same." *Lavigne v. Cajun Deep Foundations, L.L.C.*, 654 Fed. App'x. 640, 648 (5th Cir. 2016) (citing *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878–79 (5th Cir. 2003)). In addition, the Fifth Circuit has stressed that, "[c]onsistent with the remedial purposes underlying Title VII," the courts are obliged to "construe employment discrimination charges with the 'utmost liberality,'" considering that such charges are "generally prepared by laymen untutored in the rules of pleading." *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 77–78 (5th Cir. 1982).

In its brief, IBM conceded that the actions described in the January 30 charge were substantively similar to those set forth in the January 29 charge.  (IBM M/Dismiss, Memo., pg. 3).  Therefore, it did not contest that the January 30 charge relates back to the January 29 charge. The Court agrees with this conclusion.  While Eddy modified the date for the last adverse employment action she suffered, the underlying act(s) and facts are effectively the same.

Therefore, the Court finds that Eddy's EEOC charge is timely as to the alleged adverse employment action that she suffered on April 4, 2023.  However, Eddy's claims stemming from conduct that occurred in December 2020, February 2022, and September/December 2022 are all time barred because she did not file a charge within 300 days of those alleged discriminatory and/or retaliatory actions.[4]  *See Judy Chou Chiung-Yu Wang v. Prudential Ins. Co. of Am.*, 439 Fed. App'x. 359, 366-367 (5th Cir. 2011) (various claims time-barred for failure to file timely charge within 300 days of the alleged unlawful conduct); *Ollie v. Plano Indep. Sch. Dist.*, 323 Fed. App'x. 295, 299–300 (5th Cir. 2009) (most of alleged discriminatory conduct occurred more than 300 days prior to the filing of plaintiff's EEOC charge, and, thus, cannot support her claim). Consequently, Eddy failed to timely exhaust administrative remedies as to those claims, and they are subject to dismissal on that basis.  *See Moore v. Angus Chem. Co.*, Civ Action No. 07-0415, 2008 WL 4491592, at *7 (W.D. La. Oct. 1, 2008); *Lovell v. Office of Fin. Institutions*, Civ. Action No. 18-0575, 2019 WL 1233856, at *3 (M.D. La. Mar. 15, 2019) (citations omitted).

IBM further argues that Eddy's charge is untimely as to her requests for a promotion that she made in January 2023 because those were discrete attempts to obtain a promotion that Eddy

---

[4] Furthermore, Eddy advanced no argument regarding equitable tolling or a continuing violation that could excuse her failure to file a timely charge as to those claims.

knew had been unsuccessful long before April 4, 2023. However, in one or more of her responses to the motion to dismiss, Eddy stated that IBM essentially strung her along and assured her that her promotion was imminent. *See, e.g.*, doc. # 45. She further explained that the purpose of the April 4, 2023 meeting with Reyes was to discuss her promotion. *Id.*[5] On April 4, 2023, however, Eddy learned not only that she was *not* receiving a promotion, but, instead, that she was being discharged because of her failure to receive a promotion.

Accordingly, the Court finds that, because Eddy did not learn until April 4, 2023, that her promotion requests had been denied, her January 2023 requests for promotion are part and parcel of her adverse employment action that did not accrue until her months-long efforts to obtain a promotion were finally and decidedly quashed on April 4, 2023. Therefore, the requests for promotion that Eddy made in January 2023 were timely raised in her EEOC charge.

b)      Scope of the Charge

In the narrative section of her charge(s), Eddy stated that she believed that she "was retaliated against and held back from promotion because of past claims submitted." (Jan. 30, 2024 EEOC Charge, Amend. Compl., Exh. F). In short, she contends that IBM retaliated against

---

[5] IBM suggests that the Court cannot consider the additional statements that Eddy made in her response(s) because they are not included in her amended complaint and its attachments. However, courts liberally construe pro se allegations. *Haines v. Kerner*, 404 U.S. 519, 520, (1972). Moreover, in the pro se context, courts may construe responses to dispositive motions as motions for leave to amend the complaint. *Ganther v. Ingle*, 75 F.3d 207, 211-212 (5th Cir. 1996) (plaintiff's response to the motion for summary judgment should have been treated as a motion to amend complaint). Of course, leave to amend shall be "freely [granted] when justice so requires." FED. R. CIV. P. 15(a)(2). In addition, a district court must have a "substantial reason" to deny a request for leave to amend. *Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (citation omitted).

IBM did not proffer any substantial reason why Eddy should not be permitted to amend her complaint a second time. Thus, the Court will consider Eddy's additional allegations made in her response brief [doc. # 45] as an amendment to her pleading.

her by denying her request(s) for a promotion.  In her amended pleading, however, Eddy

arguably alleged that she also was not promoted, i.e., discriminated against, on the basis of her

race.  She expounded upon that allegation in one or more of her responses to the motion to

dismiss, which the Court has determined it may consider as an additional amendment to her

pleading.  *See* fn. 6.

        In its motion, IBM argues that Eddy failed to exhaust her race discrimination claim based

on the April 4, 2023 failure to promote.  Specifically, IBM argues that this claim does not fall

within the scope of Eddy's EEOC charge, in which she characterized the action solely as an act

of retaliation.

        In assessing whether a plaintiff has exhausted a particular claim, "the scope of an EEOC

complaint should be construed liberally."  *Jennings v. Towers Watson*, 11 F.4th 335, 342 (5th

Cir. 2021) (citing, *inter alia*, *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir.

2017)).  On the other hand, the primary purpose of administrative exhaustion is "to facilitate the

[EEOC's] investigation and conciliatory functions and to recognize its role as primary enforcer

of anti-discrimination laws . . ."  *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021)

(quoted source omitted).  Moreover, the EEOC charge provides the employer with notice of the

existence and general substance of the discrimination allegation.  *Id*. (citation omitted).  "To

balance these considerations, [the Fifth Circuit] interprets what is properly embraced in review of

a Title[ ] VII claim somewhat broadly, not solely by the scope of the administrative charge itself,

but by the scope of the EEOC investigation which can reasonably be expected to grow out of the

charge of discrimination."  *Jennings,* 11 F.4[th] at 342 (quoted source and internal quotation marks

omitted).  Consequently, the courts must "engage in fact-intensive analysis of the statement

given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its

substance rather than its label."  *Id*. (citation omitted).

Ultimately, an unlawful employment practice lawsuit "may include allegations like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (quoted source and internal quotation marks omitted). However, "[c]ourts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation." *McClain*, 519 F.3d at 273.

In this case, Eddy checked the boxes on her EEOC charge indicating that she thought she had been discriminated against on the bases of race, age, and retaliation. However, in the narrative section of her charge, she explained that she had been denied promotion on April 4, 2023, in retaliation for the prior claims she had submitted. She did not describe IBM's failure to promote her as a race-based decision.

In *Givs v. City of Eunice*, Judge Melançon held that checking the box for retaliation on an EEOC charge is insufficient to exhaust administrative remedies for retaliation when the facts alleged in the narrative section describe solely race discrimination. *Givs v. City of Eunice*, 512 F.Supp.2d 522, 537 (W.D. La. 2007), *aff'd,* 268 Fed. App'x. 305 (5th Cir. 2008)). He emphasized that claims of retaliation and harassment "are not sufficiently related to [a] discrimination charge nor can they be supported by the facts alleged in the EEOC charge and are therefore barred from being brought before the Court by this failure to follow the appropriate administrative procedure." *Id*.; *see also Doe v. Merritt Hosp., LLC*, 353 F.Supp.3d 472, 479-480 (E.D. La. 2018) (dismissing sexual harassment claim for failure to exhaust administrative remedies, despite plaintiff's checking the box for sex discrimination, where the plaintiff described his claim solely in terms of a disability-inspired termination).

Applying the foregoing, non-binding authority here, the Court is not persuaded that the

EEOC's investigation of a race-based discrimination claim is reasonably expected to grow out of a narrative that describes solely retaliation, i.e., the inverse of the situation presented in *Givs*. Moreover, despite ample opportunity to amend, Eddy's pleading does not include facts to show that the actual scope of the EEOC's investigation included a race discrimination claim. Accordingly, the Court is constrained to find that Eddy failed to exhaust administrative remedies as to her race discrimination claim stemming from the April 4, 2023 denial of her request for promotion. Dismissal of that claim necessarily follows. *Givs*, 512 F.Supp.2d at 537; *Doe*, 353 F.Supp.3d at 480.

## II.    Sufficiency of the Remaining Retaliation Claim

The Court has determined that Eddy timely and properly exhausted only one claim: that IBM retaliated against her for submitting past complaints when it refused to promote her on April 4, 2023. *See* discussion, *supra*. Accordingly, the Court's discussion of the sufficiency of her claims will be limited to the foregoing retaliation claim.

"[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive a Rule 12(b)(6) motion. *Swierkiewicz v. Sorema*, 534 U.S. 506, 511, (2002); *see also Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). The Supreme Court explained that the *McDonnell Douglas* framework[6] "is an evidentiary standard, not a pleading requirement." *Swierkiewicz*, 534 U.S. at 510.[7] Therefore, a plaintiff's complaint need only comply with Rule 8, which requires no more than "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8; *Swierkiewicz*, 423 U.S. at 515.

However, the Fifth Circuit maintains that the prima facie standard *is* relevant at the

---

[6] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[7] Furthermore, *Twombly* did not overrule *Swierkiewicz*. *Twombly*, 550 U.S. at 569-70. 1955.

motion to dismiss stage at least in the sense that a plaintiff is obliged to plead facts as to each of the ultimate *elements* of her claim sufficient to render the case plausible. *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016). In other words, it may be helpful to reference the *McDonnell Douglas* framework on which plaintiff must rely if she bases her claim on circumstantial evidence. *Id.*

Nonetheless, *McDonnell Douglas* is *not* dispositive at the pleading stage because it may not even apply if discovery reveals direct evidence of discrimination. *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1212 (5th Cir. 2021), *as revised* (Nov. 26, 2021). "A district court therefore errs by requiring a showing of each prong of the prima facie test for disparate treatment at the pleading stage[.]" *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (quoted source omitted). Instead, plaintiffs must "plead sufficient facts on all of the *ultimate elements* of [their discrimination] claim to make [their] case plausible." *Id.* (citation omitted); *see also Smith v. Kendall*, No. 23-50713, 2024 WL 4442040, at *6 (5th Cir. Oct. 8, 2024) (unpubl.).

To establish a claim for unlawful retaliation, Eddy must show that, "1) she engaged in protected activity, 2) she suffered an adverse employment action, and 3) a causal link exists between the protected activity and the adverse employment action." *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021) (citation omitted) (Title VII); *Heggemeier v. Caldwell Cnty., Texas*, 826 F.3d 861, 869 (5th Cir. 2016) (ADEA).

For purposes of the first element of a retaliation claim, an employee has engaged in a protected activity when she "either (1) opposed any practice made an unlawful employment practice by Title VII [or the ADEA] or (2) if she made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII [or the ADEA]." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (citation omitted)

17

(Title VII); *see Heggemeier*, 826 F.3d at 869 (ADEA).

Here, apart from her complaint regarding age discrimination in December 2020, Eddy does not allege that she participated in any other protected activity.  While she complained about an unfair year-end evaluation in February 2022 and alleged "harassment" by Matamoros in September 2022, she does not allege that she attributed these actions, *at that time*, to an unlawful employment practice in violation of Title VII or the ADEA when she complained to IBM management.[8]  "[A]n employee cannot simply complain that she received unfair or undesirable treatment.  A vague complaint that does not reference a discriminatory employment practice does not constitute a protected activity."  *Carter v. Target Corp.*, 541 Fed. App'x. 413, 418–19 (5th Cir. 2013) (citations omitted); *see also Foster v. Ferrellgas, Inc.*, 834 Fed. App'x. 88, 91–92 (5th Cir. 2020) (no protected activity where plaintiff "asked again about [her] raise," without any reference to her claims of racially disparate treatment).

Furthermore, Eddy has not alleged facts to support the causation element of her retaliation claim.  A plaintiff alleging retaliation may sometimes satisfy the causal connection element by showing temporal proximity between the protected activity and alleged retaliation.  *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948–49 (5th Cir. 2015) (citation omitted).  However, the protected act and the adverse employment action must be "very close in time" to establish causation by timing alone.  *Id*.  In *Clark County School Dist. v. Breeden*, the Supreme Court favorably cited circuit decisions holding that three-to-four-month intervals between the protected activity and the adverse employment action were not sufficiently close to support causality.  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)

---

[8] To be sure, Eddy *now* contends that the incidents in February and September 2022 were race-based.  However, the exhibits she attached to her pleading do not reflect any suspected racial motivation for the adverse work actions.  Moreover, her allegations are conclusory.

(citations omitted).

Here, Eddy's only confirmed protected activity occurred in December 2020, which was well over two years before she was denied a promotion in April 2023. A delay of that length suggests no causality at all. *Breeden*, 532 U.S. at 274. Even if Eddy's complaint in September 2022 regarding Matamoros's actions qualified as a protected activity, it still occurred seven months before the denial of her promotion, which is not sufficiently close to support causation. *See Dietrich v. United Parcel Serv., Inc. (Ohio)*, No. 24-50316, 2025 WL 445050, at *4 n.3 (5th Cir. Feb. 10, 2025) (four-or-five-month interval is not sufficiently close to support causation); *Ajao v. Bed Bath & Beyond, Inc.*, 265 Fed. App'x. 258, 265 (5th Cir. 2008) (temporal proximity of four months is not close enough to establish a causal connection).

Nor has Eddy alleged other facts which would support the causation element.

In sum, Eddy does not state a claim for retaliation under Title VII and the ADEA.

## Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that Defendant International Business Machines Corporation's motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 29] be GRANTED, and that Plaintiff Regina Eddy's complaint, as amended, be DISMISSED, with prejudice, in its entirety. FED. R. CIV. P. 12(b)(6).[9]

---

[9] To the extent that the undersigned has varied from the grounds for dismissal urged by movant, the instant report and recommendation provides adequate notice to the parties. *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties). In any event, the court possesses the inherent authority to dismiss a party sua sponte. *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 1995 WL 534901 (5th Cir. 1995) (unpubl.) (the district court sua sponte dismissed claims under 12(b)(6) although the defendants never filed a motion to dismiss, nor did they plead failure to state a claim in their answer).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he or she makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 30th day **29th day of July, 2025**

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE